

June 24, 2019

Honorable Dan Aaron Polster
Carl B. Stokes United States Court House
801 West Superior Avenue, Courtroom 18B
Cleveland, Ohio 44113-1837
dan_polster@ohnd.uscourts.gov

> Cc:    Helen Norton, Judicial Assistant
>        Helen_Norton@ohnd.uscourts.gov
>        and
>        Katherine King, Deputy Clerk
>        Katherine_King@ohnd.uscourts.gov

*Via Electronic Mail*

> Re:    Plaintiffs' Corrected Notice of Motion and Motion for Certification of Rule
>        23(b)(3) Cities/Counties Negotiation Class, *In re: Nat'l Prescription Opiate
>        Litig.*, MDL No. 2804

Dear Judge Polster:

The undersigned sincerely appreciate your willingness to meet with representatives of the Attorneys General during the June 19, 2019 status conference concerning their ongoing efforts to negotiate prompt settlements of pending litigation that provide maximum resources to abating the opioid crisis. The unique role and perspective of the Attorneys General in leading efforts to resolve these claims arises not only from the strength of their legal claims as compared to some others, but also from the States' central role in managing and funding services addressing opioid dependency.

As you review the June 17, 2019 filing of Plaintiffs' Corrected Notice of Motion and Motion for Certification of Rule 23(b)(3) Cities/Counties Negotiation Class, ECF No. 1690 ("Mot."), we request that you continue to consider the perspectives of the Attorneys General. The undersigned 26 Attorneys General respectfully urge the Court to consider the significant consequences its certification of a "negotiation class," as currently put forth in the motion, will have.

As you know, by way of background, the Attorneys General have brought state-law claims in the courts of their respective States against the various defendants responsible for the opioid crisis. Each State has chosen which defendants to sue, with the defendants varying

widely among the different State lawsuits, as well as which claims to bring. Each State is expending significant resources to litigate these lawsuits.

The proposed "negotiation class" threatens to undermine these efforts and interfere with the States' goal of finding a collaborative and effective response to the opioid crisis. We have identified several issues in our initial review of the motion that cause us concern as to its impact on an expeditious resolution of these cases that provides maximum resources to abating the opioid crisis.[1]

*First*, the proposal treads on the States' sovereign interests in litigating (and resolving) their claims in their State courts by purporting to give a functional veto over any resolution of those cases to out-of-state non-parties that are litigating a separate matter in federal court, at least to the extent any local governmental entities might benefit from such a settlement. Under the MDL plaintiffs' proposal, "any agreed-to allocation" in a State-court case between a State and the cities or counties in that State "would be treated as a settlement and submitted to the Negotiation Class for its consideration." Mot. ¶ 8.

Specifically, the MDL plaintiffs seek to establish a team of at least three individuals (Chicago's Corporate Counsel, New York City's Corporation Counsel, and one of San Francisco's outside counsel) who, under the grant of authority of a federal court order, would have a "sole focus" on "the allocation of monies between the States and the cities and counties" in the event that there is not an agreement between a State and its cities and counties. *Id.*

The Court has previously stated that "it has no jurisdiction over (i) the AGs or their representatives, (ii) the State cases they have filed, or (iii) any civil investigations they may be conducting." Order Regarding State Court Coordination 1 (Feb. 27, 2018), ECF No. 146. The Court further noted that "nobody should construe the AGs' participation in MDL settlement discussions as a limitation on litigation in the sovereign States." *Id.*; *see also* Order (Jan. 24, 2018), ECF No. 94. Nevertheless, the MDL plaintiffs' motion appears to seek to impose

---

[1] It is not clear exactly how closely the operation of the settlement class, if approved, would follow the procedures and mechanisms explained in the filing. The submitted proposed order references "formation of a Negotiation Class with the *essential features* set forth in the Class Action Notice and Frequently Asked Questions." [Proposed] Prelim. Order Regarding Negotiation Class 1 (June 17, 2019), ECF No. 1690-4 (emphasis added). There is no definition in the proposed order of what constitutes an "essential" feature versus a *non*-essential feature that apparently will be subject to alteration without approval from the class members or even the Court. Additionally, the proposed order makes explicit reference only to the class action notice and frequently asked questions, but not to the memorandum in support of certification that provides the most granular detail about many aspects of settlement class's operation. The filing also refers to a formula to be used as the default for allocating money between counties and their constituent cities (in the absence of a consensual agreement between a county and its cites), but it does not appear that the MDL plaintiffs' counsel currently plan to make the formula available. *See* Pls.' Corrected Mem. in Supp. of Certification 50 n.20 (June 17, 2019), ECF No. 1690-1 ("Mem.").

obligations on the States in how they interact with political subdivisions, including their own. This implicates potential federalism issues. *Cf. Horne v. Flores*, 557 U.S. 433, 448 (2009) ("Federalism concerns are heightened when . . . a federal court decree has the effect of dictating state or local budget priorities.").

But our "constitutional structure" protects "the 'dignity' to which states are entitled" by preventing them from being involuntarily "'dragged' into any court." *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011) (quoting *Alden v. Maine*, 527 U.S. 706, 714, 718 (1999)). This principle is no less applicable where the "dragging" is accomplished by authorizing federal class action litigants – themselves political subdivisions of States – to approve or reject a State's settlement that would stand to benefit them. *Accord Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 217 (2d Cir. 2013) (affirming remand of State opioid litigation to State court and holding that State Attorney General's action was not "similar" to a class action).

If the Court were to grant the unprecedented "negotiation class" certification motion, in the manner currently set out, the only way to avoid this fundamental threat to State sovereignty would be to exclude all local governmental entities from receiving any benefit under a settlement negotiated by a State. This would be a perverse result indeed, especially in light of the States' goal of finding a collaborative and effective response to the opioid crisis.

*Second*, although the MDL plaintiffs are correct that achieving "global peace" is a significant objective of any settlement negotiation, *see* Mot. 4, their proposal cannot achieve that result. The proposed "negotiation class" does not, and cannot, include States that have chosen to litigate state-law claims in their own courts. Some States have already settled their claims with defendants that are also defendants in the MDL. States will continue to litigate – and, where appropriate, to resolve – their cases without seeking approval from a committee or vote of cities and counties around the country. Because it cannot jurisdictionally or constitutionally control the outcomes of the States' cases, the proposed "negotiation class" cannot provide "global peace."

*Third*, the allocation system proposed by the MDL plaintiffs is at odds with their stated goal of "coordinated" solutions to the opioid crisis. Mem. 59. [2] The MDL plaintiffs propose to allocate settlement funds among up to 24,500 cities and counties based on the number of adverse opioid outcomes within their jurisdictions – regardless of whether caring for the victims falls to State, county or municipal officials. Doling out small buckets of funds without regard to how the funds should be spent is the opposite of a "coordinated" response, which would balance statewide efforts – such as public education campaigns, with local efforts. It also purports to

---

[2] The MDL plaintiffs' claim that "[t]he crisis requires nationwide remedies," Mem. 59, is perplexing and wrong. States bear the primary brunt of the opioid crisis, which has hit different States in different ways; this crisis calls for solutions that address the State-specific divisions of responsibility between State and local governments. Several States have fought successfully to keep their State-court cases from being removed to federal court.

override State decision-making about how best to apply resources to the epidemic and may well interfere with existing State programs and priorities.

*Fourth*, the conceded novelty of this motion also raises the prospect of lengthy appeals challenging whether Rule 23 allows for the certification of a "negotiation class," as well as whether the proposed class satisfies the Rule 23 factors.  *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997) (plaintiffs who were all "exposed to asbestos products supplied by the defendants" but had various other differences did not meet predominance requirement under Rule 23(b)(3)).  This delay and uncertainty may well further undermine the States' efforts to reach a timely resolution.

*Finally*, the Attorneys General have potential concerns about whether the motion's provisions concerning attorneys' fees, *see* Mot. ¶ 9, are consistent with providing maximum resources to abate the opioid crisis.  Based on our initial review, there appear to be at least two different manners in which private counsel for the local governments could obtain attorneys' fees:  the 10% "Private Attorneys' Fees Fund," Mem. 39-40, and a Class Counsel Fees fund "[a]t the Classwide level" that "includ[es] work done by any counsel for the common benefit under the Court's Orders prescribing same," *id.* at 42.  Although the MDL plaintiffs' counsel should be paid fairly for their work in the complex MDL proceeding, it is also a reality that the MDL defendants will likely provide a finite amount of money to resolve all of the cases, with any excess award of attorneys' fees necessarily lessening the funds available to abate the crisis.

Although the States share the desire to resolve the many cases that have been filed, they respectfully submit that the proposal to create a federal "negotiation class" in this complex series of matters only promotes more uncertainty, more litigation, and less potential for resolution than if the States' efforts were not impeded.  Again, the Attorneys General appreciate the Court's willingness to remain in communication with us as well as its recognition of the important role the States play in resolving this uniquely complex litigation in a way that has the potential to provide substantial and lifesaving resources to governmental entities for remediating the opioid crisis.  We trust that the Court will continue to seek our counsel and take our perspective into account in ruling on the novel and complex legal issues addressed by the MDL litigation and the pending certification motion.

Respectfully,

Ashley Moody
Florida Attorney General

Joshua H. Stein
North Carolina Attorney General

Herbert H. Slatery III
Tennessee Attorney General

Kevin G. Clarkson
Alaska Attorney General

Xavier Becerra
California Attorney General

Philip J. Weiser
Colorado Attorney General

William Tong
Connecticut Attorney General

Kathleen Jennings
Delaware Attorney General

Karl A. Racine
District of Columbia Attorney General

Leevin Camacho
Guam Attorney General

Kwame Raoul
Illinois Attorney General

Tom Miller
Iowa Attorney General

Derek Schmidt
Kansas Attorney General

Jeff Landry
Louisana Attoney General

Aaron M. Frey
Maine Attorney General

Brian E. Frosh
Maryland Attorney General

Keith Ellison
Minnesota Attorney General

Eric Schmitt
Missouri Attorney General

Doug Peterson
Nebraska Attorney General

Wayne Stenehjem
North Dakota Attorney General

Dave Yost
Ohio Attorney General

Peter F. Neronha
Rhode Island Attorney General

Jason Ravnsborg
South Dakota Attorney General

Ken Paxton
Texas Attorney General

Mark R. Herring
Virginia Attorney General

Patrick Morrisey
West Virginia Attorney General